NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUCILLE SCOTT, : <br> : <br> Plaintiff, : <br> : **Hon. Dennis M. Cavanaugh** <br> v. : <br> : **OPINION** <br> DEMARCO REI, INC., GATEWAY : <br> FUNDING, LLC, DIVERSIFIED : Civ. No. 10-3822 (DMC) (JAD) <br> MORTGAGE SERVICES, L.P., : <br> GARDEN STATE LAND TITLE, LLC, : <br> POWERS KIRN, LLC, WILLIAM : <br> POWERS, CHASE FINANCE LLC, AND : <br> JOHN DOES 1-5, : <br> : <br> Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the separate motions of Chase Home Finance LLC ("Chase"), Gateway Funding Diversified Mortgage Services, L.P. ("Gateway"),[1] and William Powers ("Powers") to dismiss all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. No oral argument was heard pursuant to Rule 78. For the reasons stated below, the motions of Chase and Gateway regarding the federal claims against them are granted and the case is remanded to the Superior Court, Chancery Division, Essex County.

## I. BACKGROUND[2]

---

[1] Chase and Gateway are incorrectly captioned as Chase Finance LLC and Gateway Funding, LLC.

[2] The facts in the Background section have been taken from the parties' submissions. On this motion to dismiss, the Court will take Plaintiff's factual allegations in her complaint to be

Plaintiff Lucille Scott ("Plaintiff") is the victim of a foreclosure rescue scam – a scheme commonly known as a sale-leaseback arrangement, in which she was tricked into deeding her house to a straw purchaser and then entering into a lease with an option to repurchase based on a promise that this was how she could save her home from foreclosure.

Plaintiff and her late husband William purchased their family home in Irvington, New Jersey in 1997 for $90,000. Compl. ¶ 14. In 2007, while suffering from financial difficulties, Plaintiff responded to a mailed advertisement she received from Defendant DeMarco REI, Inc. ("DeMarco"), a company purporting to help homeowners save their homes from foreclosure. Compl. ¶¶ 24, 25. She was subsequently contacted by Elaine Del Campo, a representative of the company. Compl. ¶ 26. Plaintiff completed what she believed was a mortgage application sent to her by DeMarco and returned the application to the company along with supporting documents. Compl. ¶ 29. She was informed a few days later that "Demarco could help her save her home." Compl. ¶ 31.

On September 28, 2007, Plaintiff was picked up by Del Campo and Kristin Miller, an employee or agent of Defendants Garden State Land Title, LLC ("Garden State") and Powers Kirn, LLC ("Powers Kirn") and taken to the offices of Powers Kirn for a "closing." Compl. ¶¶ 34, 39. Upon arrival, Plaintiff was introduced to Tim Muir, and told that he was to be the "property manager." Compl. ¶ 42. Plaintiff was also advised that she would be making all payments through Muir and that she should call him if she had any problems. Id. Plaintiff was then instructed to sign a stack of documents. Compl. ¶ 43. Upon doing so, she noticed the name "Samuel Agresta" on some of the papers. Compl. ¶ 44. She inquired as to who Mr. Agresta was and whether he was present and was informed that his presence was not necessary and that he "was just someone to put

---

true and construe all facts in her favor.

his name on her mortgage and that after a period of time Mrs. Scott would have everything back in her name and that she should not be worried or concerned about those details." Compl. ¶¶ 46-47.

Though Plaintiff believed that the purpose of the closing was to grant her a new mortgage, she actually executed a contract for the sale of her home to Agresta for $186,000.00. Compl., Ex. A. Additionally, Plaintiff signed a one-year lease between herself and DeMarco, in which she agreed to pay DeMarco $1,650 per month in order to remain in her home. Compl., Ex. B. The lease provided Plaintiff with an option to repurchase her home at any time for the purchase price of $167,400 and consideration of $8,981.25. Id.

After the closing, Plaintiff made biweekly payments of $825.00 to DeMarco from October 2007 until September 2009, totaling almost $39,000. Compl. ¶ 59. Plaintiff received a renewal lease on September 28, 2009. Compl. ¶ 61. The lease directed payments to Optima Property Management Group, LLC, not DeMarco or Agresta. Compl. ¶ 62. Around that same time, Plaintiff observed a man taking pictures of her house. Compl. ¶ 63. The photographer informed her that he had been sent by the bank and that the bank would be commencing a foreclosure action against the property. Compl. ¶ 64. Fearing that something was amiss, Plaintiff stopped making payments to DeMarco and placed the money in escrow instead. Compl. ¶ 65. She also contacted her pastor for assistance, and together they contacted Agresta. Compl. ¶ 66, 67. Agresta informed Plaintiff that "he did not own any property in Irvington and suggested that they talk to his son, Stephen." Compl. ¶ 68. Agresta passed away shortly thereafter. Compl. ¶ 69.

Following Agresta's death, his sons Stephen and Rocco instituted a landlord tenant action to evict Plaintiff from the property after she refused to pay rent or participate in efforts to persuade Chase to accept a short sale. Compl. ¶ 73. Plaintiff responded through counsel and disputed the

Agrestas' right to possession of the property to rent. Compl. ¶ 74. After the Agrestas' attorney reviewed the loan file that Plaintiff had obtained from counsel for Powers, the Agrestas voluntarily agreed in open court to dismiss the action and deed the property back to Plaintiff. Compl. ¶ 77. In March 2009, Chase filed a foreclosure complaint seeking possession and sale of the property.

Plaintiff filed the present action on May 12, 2010, in the Superior Court, Chancery Division, Essex County. Chase subsequently removed the action to this Court on the basis of federal question jurisdiction.

## II. STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. 550 U.S. at 555.

## III. DISCUSSION

A. Federal Claims

The Complaint alleges claims under the Truth in Lending Act ("TILA") and the Home

Ownership and Equity Protection Act ("HOEPA") against Chase, Gateway, and DeMarco. Compl. ¶¶ 97-119.[3] Chase and Gateway argue that both of these counts must be dismissed because Plaintiff lacks standing to assert these claims. Plaintiff counters that she has standing because she entered into an equitable mortgage with Gateway and therefore "it is clear that Gateway was required to provide accurate material disclosures to Mrs. Scott and that Chase is also liable as assignee." Pl.'s Opp'n Br. 26. The Court finds that there was no equitable mortgage between Plaintiff and Gateway and thus, the TILA and HOEPA claims must be dismissed.

For Plaintiff to have rights under TILA and HOEPA, she must be a "consumer of credit." Johnson v. Novastar Mortg., Inc., 698 F. Supp. 2d 463, 468 (D.N.J. 2010) (citation and internal quotation marks omitted). "Thus, courts within this circuit have held that in order to show an injury under [TILA] and HOEPA, Plaintiff must have been doing business with Defendant." Id. (citation and internal quotation marks omitted). For this requirement to be satisfied, the Court must view the sale-leaseback transaction in question in light of New Jersey's equitable mortgage doctrine. Id.

"To create an equitable mortgage, all circumstances must indicate that both parties intended the transaction to be a loan advanced on security of realty." O'Brien v. Cleveland, 423 B.R. 477, 490 (Bankr. D.N.J. 2010) (citation and internal quotation marks omitted). The factors the Court must consider in order to determine the parties' intent are:
> (1) the transaction and documents and whether they used terms such as debt, security, or mortgage; (2) the value of the property versus the loan amount; (3) the nature of the solicitation that gave rise to the transaction in question; (4) whether the owner attempted to sell the property on the open market; (5) whether the sale price was negotiated by the parties; and (6) whether the foreclosee continued

---

[3]The docket indicates that DeMarco has not sufficiently been served with a copy of the summons and Complaint in this district and therefore has not entered a notice of appearance with this Court. Accordingly, the Court declines to make any legal determinations as to this party.

occupancy of the home after the transaction.
Id. Upon reviewing these factors, it is plain that while an equitable mortgage may have existed between Plaintiff and Agresta and/or Plaintiff and DeMarco, it certainly did not exist between Plaintiff and Gateway.[4] See There is no allegation in the Complaint, or any documentation, that Plaintiff and Gateway engaged in any legal transaction. Agresta, the "purchaser" of Plaintiff's home took out a mortgage with Gateway for $167,400.00 on September 28, 2007 in order to purchase the property. Agresta signed the mortgage and the note and also signed a TILA disclosure statement. When the mortgage was assigned to Chase, Notice of Assignment of Mortgage was sent to Agresta. At no time were Plaintiff or DeMarco listed as borrowers on any of these loan documents. Plaintiff never made any mortgage payments to Gateway. Instead, all of her checks were sent directly to DeMarco, as required under the lease document.

The Complaint states that "Defendant Gateway had actual or constructive notice that the September 28, 2007 transaction was not a true sale but rather disguised security interest and that DeMarco through its agent, Agresta, was not the owner of the property but at best the holder of an equitable mortgage," Compl. ¶ 79. This conclusory statement is not supported by any facts and therefore does not sway the Court. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (noting that "pleadings that . . . are no more than conclusions, are not entitled to assumptions of truth.") The only reference in any of the mortgage documents to the existence of DeMarco in this transaction was a line in the HUD-1 statement indicating that a portion of the mortgage proceeds due to the seller was

---

[4]Plaintiff points to O'Brien as the basis for finding Gateway liable. However, the facts in O'Brien only serve to establish the potential for recovery against DeMarco, the party that engaged in a transaction with Plaintiff, not Gateway, the party that lent money to a straw-purchaser borrower. See O'Brien, 423 B.R. at 486 (noting dismissal of claims against secondary lender).

to be paid directly to DeMarco.  The Court does not believe that there was any reason, however, for that to put Gateway on notice that there was a deficiency in the transaction between Plaintiff and Agresta given that the payment to DeMarco was listed below payoffs to other banks.

Based on the lack of any allegations or evidence establishing that Plaintiff was engaged in a consumer credit transaction with Gateway, the Court finds that the TILA or HOEPA claims against Gateway must be dismissed.  See, e.g., Talley v. Deutsche Bank Trust Co., No. 07-4984 (RBK), 2008 U.S. Dist. LEXIS 83148, at *5 (D.N.J. Oct. 15, 2008) (dismissing TILA claim because "[i]n order for Defendant to be obligated to disclose credit terms to Plaintiff, Plaintiff must have been doing business with Defendant, and she was not.").[5]

The Court further finds that because TILA and HOEPA claims may not be brought against Gateway, they also may not be brought against Chase as an asignee.  See 15 U.S.C. 1461(a) ("Except as otherwise specifically provided in this title . . .any civil action for a violation of this title . . . or proceeding under section . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.") (emphasis added).

B. State Claims

As the Court has dismissed the federal claims that were the basis for removal to this Court, it finds that it lacks subject matter jurisdiction over this matter, and all remaining claims will be remanded pursuant to 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

[5]

## IV. **CONCLUSION**

For the reasons stated, the motions of Chase and Gateway to dismiss the TILA and HOEPA claims against them are granted and this matter is remanded to the Superior Court, Chancery Division, Essex County.

                         S/ Dennis M. Cavanaugh
                         Dennis M. Cavanaugh, U.S.D.J.

Date:        March  29 , 2011
Orig.:        Clerk
cc:          All Counsel of Record
                Hon. Joseph A. Dickson, U.S.M.J.
                File